**UNITED STATES of America**

v.

**August J. LIPPI.**

**Cr. A. No. 1269.**

United States District Court
D. Delaware.

Feb. 2, 1961.

Daniel H. Jenkins, U. S. Atty., and Phillip H. Williams, Asst. U. S. Atty. of Middle District of Pennsylvania, Scranton, Pa., for plaintiff.

Joseph P. Brennan, Scranton, Pa., for defendant.

CALEB M. WRIGHT, Chief Judge.

Defendant was indicted and convicted under 29 U.S.C.A. § 186 (b, d) which provides in part,

"It shall be unlawful for any representative of any employees * * to receive or accept * * * from the employer of such employees any *money or other thing of value.*" (Emphasis supplied.)

From this conviction, defendant moves for a new trial or judgment of acquittal.

Defendant became President of the United Mine Workers, District 1, in July, 1951, and held this office at the times specified in the indictment. There is, therefore, no question but that he was a "representative of * * * employees" within 29 U.S.C.A. § 186(b).

Count 1 of the indictment alleged that defendant received and accepted "money" in the sum of $2,500 from the Knox Coal Co. on or about October 16, 1956. The proof under this count consisted generally of a check of the Coal Co., payable to "cash" and dated October 16, 1956. Certain other items, not relevant to matters discussed in this opinion, were introduced to show receipt and knowledge on the part of defendant. It is noteworthy, however, that the tax returns introduced by the government indicated that the Coal Co. and defendant treated these payments as dividends and that known stockholders received like amounts at the same time.

Count 2 similarly alleged receipt and acceptance of "money" from the Coal Co. on October 16, 1956, but in the sum of $3,617.52. The proof here consisted of a Coal Co. check made to an insurance company in payment of premiums on certain life insurance policies. These policies covered the lives of two stockholders of the Coal Co., the General Manager, and defendant. They were taken out by the above-named parties pursuant to a trust agreement stating that defendant was a stockholder and providing that upon the death of one of the parties, the proceeds of the relevant policies would be used by the survivors to purchase the ownership interest of the deceased from his heirs. The agreement also provided that the trustee, a reputable bank in Philadelphia, would keep in its possession the stock mentioned in the agreement. Although the agreement specified that the parties would be responsible for payment of the premiums, they were paid in 1956 by a Coal Co. check for $3,617.61. The company and the parties,[1] however,

1. This is not true as to the General Manager, for the payment to him was treated as a bonus.

treated this payment as a dividend in their tax returns, this amount fulfilling the obligations of all parties to the trust agreement.

Count 3 also alleged receipt of "money", this time $4,000 on January 16, 1957. Again the proof consisted of a Coal Co. check made to "cash", and again it was reported as a dividend by defendant and the company, all other stockholders receiving a like amount.

Defendant makes many assignments of error with which this opinion need not deal, for the Court believes that defendant is entitled to a new trial on one ground alone.

■ Count 2 alleges receipt only of "money" and omits the alternative statutory phrase "other thing of value." At trial, defendant objected strenuously to introduction of evidence pertaining to payment of insurance premiums by the Coal Co. on the grounds that this was not "money" received by the defendant within the meaning of 29 U.S.C.A. § 186 (b). The Court believes that defendant's position was correct.

■ 29 U.S.C.A. § 186(b) condemns the receipt of "any money or other thing of value." Even a canon of construction less strict than that applicable to criminal statutes would not lead to the conclusion that these words are wholly interchangeable, for reason demands that they be construed so that neither term is surplusage. Moreover, the use of the word "other" before "thing of value" plainly indicates that Congress intended to distinguish between the two. Although this distinction may be shadowy in particular cases, the government may always protect itself by including both in the indictment. See e. g., Price v. United States, 5 Cir., 1945, 150 F.2d 283.

■ In any event, this distinction becomes critical only when the indictment fails to specify both. The problem of statutory interpretation then is somewhat akin to that of determining whether the accused has been apprised of the charges made against him. The instant case is a perfect example of this. Two Counts allege receipt of "money", the proof consisting of checks made to "cash" and negotiated soon after they were received. The Court does not doubt that their receipt and negotiation constitutes acceptance of "money" within the terms of the statute. A check has little value other than its quality of negotiability, and, at least when this is swiftly taken advantage of, it is so nearly the equivalent of currency that the statutory language is not strained by including it within the term "money". Moreover, in such a situation, the accused is amply apprised of the charges against him, and substantial justice is done without undue attachment to technicalities.

■ The positive need for such a distinction, however, appears from an examination of Count 2 where receipt of "money" is alleged and payment of premiums on three insurance policies is proven. Valuation of the benefits so received may range from the amount of premiums paid to the cash surrender value to the estimated worth of the feeling of security one has in the knowledge that his loved ones will be provided for. In short, no certain monetary value can be attributed to these benefits. This is amply demonstrated by Count 2 itself, which alleges the receipt of $3,617.52, apparently in reference to the total amount of premiums paid by the Coal Co., on October 16, 1956. Yet it is clear that only part of this sum was intended to benefit the defendant, the remainder going for premiums on policies protecting other parties. The net result, therefore, is that defendant received not "money" but a "thing of value" and that there has been a variance between the indictment and the government's proof.

The Court finds this variance affects substantial rights and is, therefore, fatal. See Rule 52(a), F.R.Crim.P., 18 U.S.C.A. An accused has a fundamental right to be informed of the charges against him so that he may adequately prepare for trial. Here the government employed language of a statute in framing an indictment and charged the more specific of two statutory means by which the crime

might be committed. In view of the fact that the government could have charged both, the Court is of the opinion that defendant had a right to rely on the charges so framed and that the government is bound by them. Counsel's preparation and investigation may vary radically depending upon whether receipt of "money" or "thing of value" or both is charged. The issues of knowledge and willfulness, for example, may require completely different forms of proof or different methods of defense under one charge than they would under the other. This is not a case where there has been a slight variance between facts alleged and those proven. The government here alleged a violation by one statutory means and then proved a violation by an alternative means not specified in the indictment. To do so, at least in the context of 29 U.S.C.A. § 186(b), is *per se* misleading.

The Court is aware that the Court of Appeals for the Tenth Circuit has reached a different conclusion on somewhat similar facts. Korholz v. United States, 10 Cir., 1959, 269 F.2d 897. Nevertheless, it believes Stirone v. United States, 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed. 2d 252, to be controlling and dispositive of the matter here. In that case, the indictment charged interference with interstate commerce by extortion in violation of 18 U.S.C.A. § 1951. The commerce involved was charged to be shipments of sand from another state into Pennsylvania for purposes of constructing a steel mill. The lower courts held that not only would this charge go to the jury but also that the government might prove that the steel to be produced by the mill would be shipped in interstate commerce. Holding this to be a fatal variance, the Supreme Court unanimously reversed and ordered a new trial. The Court held in part, " * * * a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." 361 U.S. 212, 217, 80 S.Ct. 270, 273. Yet this is precisely what the government now desires to do. Although the Stirone decision involved

a variance between facts pleaded and those proved, it is quite similar to the instant case, for in both, the government charged a specific type of violation and then attempted to show another, and different, kind. In reference to this, the Supreme Court remarked:

> " * * * [W]hen only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened." 361 U.S. 212, 218, 80 S.Ct. 270, 274.

It follows, therefore, that a judgment of acquittal must be entered on Count 2.

Because the amount of evidence admitted to prove Count 2 was very substantial and may now be irrelevant and prejudicial in view of the above ruling, a new trial must be granted as to Counts 1 and 3. The government contended at trial that the device of treating the defendant as a shareholder of the Coal Co. was wholly a sham. Since this issue was common to all counts, the jury probably did not separate each count in its mind when considering this particular question. On the other hand, because of this issue, much of the same evidence may again be introduced upon the trial of Counts 1 and 3. But with the case in its present posture, it is impossible to separate the irrelevant from the relevant and the harmless from the prejudicial, and a new trial must be ordered.

Another independent ground for a new trial may exist. The Court has ruled that if defendant was a legitimate stockholder in the Coal Co., his receipts of dividends would not be violative of 29 U.S.C.A. § 186(b). This conclusion is confirmed by a review of the legislative history. Most of the debate focused upon problems resulting from governmental regulation of pension and welfare funds. The prohibitions on receipt by union officers of money from employ-

ers at best was intended to reach only certain forms of bribery and extortion and was not designed to be a sweeping regulation or prohibition of all forms of conflict of interest. See generally, N.L.R.B., Legislative History of the Labor-Management Relations Act of 1947 (1948). It follows, therefore, that if defendant obtained stock in the Coal Co. through the payment of fair value or other legitimate transaction, he may not be convicted under 29 U.S.C.A. § 186(b). If, on the other hand, no such legitimate transaction was involved, a bare assertion in a trust agreement that he is a stockholder or even actual possession of stock will not immunize him upon proof that this is a mere vehicle for continuing illegal payments.

The problem, however, is that, except for two matters, the record as now constituted, taken in the light most favorable to the government, is wholly consistent with the proposition that defendant was at the relevant times a legitimate stockholder in the Knox Coal Co. Indeed, the asset ledger cards of the trustee under the trust agreement, executed before defendant became District President, indicate that the trustee actually held in its possession stock registered in the name of a bank under a deed of trust to defendant.

The evidence relied upon by the government to rebut this is the stock certificate book of the Knox Coal Co. and the testimony of defendant before a legislative committee. Because the stock certificate book is incomplete on its face as to one transaction known to have occurred, it is of almost no value in proving a negative fact, i. e., that no stock was validly transferred to defendant. The government must, therefore, rest its case upon the post-crime admissions of defendant. Yet these admissions, made before an official investigatory body, seem to be precisely that kind of statement which the Supreme Court has held must be corroborated by "substantial independent evidence which would tend to establish the trustworthiness of the statement." See Opper v. United States, 1954, 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101, and Smith v. United States, 1954, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192. Lacking corroboration, such admissions cannot be the evidentiary basis of a conviction.

None of these latter matters has been argued before this Court. Defendant's counsel, for one reason or another, has assiduously avoided any contention which would place his client in the posture of asserting that he is a stockholder in the Knox Coal Co. Although the Court might have been forced to act under Rule 52(b), F.R.Crim.P., governing "plain error", were there not other independent grounds compelling a new trial, it expressly refrains from any final ruling on the matters discussed above but brings them to counsel's attention so that they may be properly considered and disposed of at the new trial.

Submit an order.