**UNITED STATES of America**

**v.**

**August J. LIPPI.**

**Crim. A. No. 1269.**

United States District Court
D. Delaware.

April 19, 1961.

Daniel H. Jenkins, U. S. Atty., Phillip H. Williams, Asst. U. S. Atty., of Middle Dist. of Pennsylvania, Scranton, Pa., and William A. Kehoe, Jr., Dept. of Justice, Washington, D. C., of counsel, for plaintiff.

Joseph P. Brennan, Scranton, Pa., for defendant.

CALEB M. WRIGHT, Chief Judge.

The government has moved the Court to reconsider its ruling in the above-captioned case. This is a ruling upon that motion. The facts involved are set out in the previous opinion at D.C.D.Del.1961, 190 F.Supp. 604. Briefly, it held there was a fatal variance between an indictment under the pre-1959 form of 29 U.S.C.A. § 186(b),[1] alleging that a union officer had received "money" from an employer, and proof of the employer's payment of premiums on life insurance. This opinion is intended merely to deal with new arguments raised by the government and should be read in conjunction with the previous one.

■ The government strenuously contends "money", as used in 29 U.S.C.A. § 186(b), should be construed to encompass almost all forms of wealth or property.[2]

---

1. This section was amended in 1959. See 73 Stat. 537, 29 U.S.C.A. § 186 (1960 Supp.) The old section is set out in the previous opinion.

2. Government counsel disclaim this is their position. Nevertheless, by emphasizing as they do, what the employer did to create the benefit rather than what the union representative in fact received, they effectively adopt the proposition. If A pays cash for an automobile to be delivered to B, A has paid "money" while B has received a "thing of value". But the government's viewpoint is inconsistent with 29 U.S.C.A. § 186(b), which clearly focuses upon what is received.

The cases cited in support of this proposition, however, are hardly in point. Generally they concern civil litigation and were thus decided from a perspective entirely different from that required when a court is called upon to construe a criminal statute. Moreover, if these cases establish any general rule, it is that "money" must be interpreted in light of the context in which it is used. 29 U.S.C.A. § 186(b) condemns the receipt of "money or other thing of value". (Emphasis supplied.) In this context, "money" cannot be construed as broadly as the government would like without rendering the rest of the statutory phrase meaningless. This is not to say Congress did not intend to prohibit payments such as those involved here. Indeed, inclusion of the words "other thing of value" achieved that very object.

The government further contends even if "money" is not to be construed this broadly, the payments come within that term because they fulfilled a contractual monetary obligation of defendant's imposed by the trust agreement. Assuming *arguendo* that such payments would be payments of "money", this argument proves too much, for the recurrent theme of the government, indeed, the *sine qua non* of its case, has been that the trust agreement was intended only as a "cover" or vehicle for continuing illegal payments to defendant. Such a theory is wholly inconsistent with the contention that defendant incurred monetary obligations through the transaction. This crucial distinction is demonstrated by a comparison of the present case with Korholz v. United States, 10 Cir., 1959, 269 F. 2d 897, certiorari denied 361 U.S. 929, 80 S.Ct. 367, 4 L.Ed.2d 352, a decision heavily relied upon by the government.

In that case, an employer paid off a bank loan taken by a union representative. There was no question but the representative's obligation to a third party not involved in the scheme was legitimate and binding. In the present case, however, the so-called obligation arose from a transaction which the government itself has characterized as a facade and which was between the parties to the allegedly illegal scheme. The Korholz decision, therefore, even if correct, is not applicable.

▇▇ The United States further asserts Stirone v. United States, 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252, is not pertinent to the case at bar. Nevertheless, the Court continues to find it relevant, particularly to the issue of surprise. In that case, the Court of Appeals, in affirming the conviction below, found "counsel was prepared for the introduction of the testimony rather than surprised by it." [3] United States v. Stirone, 3 Cir., 1958, 262 F.2d 571, 574. Without altering this finding, the Supreme Court unanimously reversed and limited the government's proof to the specific charges contained in the indictment. Stirone v. United States, 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252. Actual surprise, therefore, is not necessary to render a variance fatal. The issue is not whether counsel is in fact surprised but whether there is a substantial possibility, tested from the perspective of the presumption of innocence,[4] that counsel will be unprepared to meet proof inconsistent with charges contained in the indictment. Although this rule may seem unduly harsh, it can be justified on several grounds. First, actual surprise may be exceedingly difficult to prove. Second, the rule discourages indifference and

---

3. An alternative ground relied upon by the Court of Appeals was the lack of a timely objection in the trial court. The Supreme Court, in reversing, apparently found the rights involved so fundamental that such an objection was unnecessary.

4. The government has contended the variance is insubstantial because defendant reported the sum paid to the insurance company as a dividend on his tax re-

turn. The Court is not impressed by this argument. First, the record is not clear as to whether the sum reported is the one specified in the indictment. Second, even if it were, it would be inconsistent with our legal tradition to justify a material variance on the grounds the defendant is guilty when the indictment itself is an integral part of the procedure employed to determine that very fact.

carelessness in the exercise of the prosecutory function, a critical role in an accusatory system such as ours. Third, as the Court remarked in Stirone, the very purpose of grand jury proceedings is to limit an accused's jeopardy to the offenses charged by his fellow citizens acting independently of the prosecutor and judge. 361 U.S. 212, 218, 80 S.Ct. 270.

Judged by this rule, the variance here is fatal. Proof on the issue of wilfulness or knowledge may be quite different when the charge involves payment of insurance premiums than when it concerns the direct transfer of currency. Counsel's investigation will also vary substantially depending upon which charge is made in the indictment.

█ The government has further asserted defendant could have protected himself by requesting a bill of particulars. This Court is unwilling, however, to require criminal defendants to employ this device solely to be certain an indictment means what it says.

█ Although a violation of 29 U.S. C.A. § 186(b) is a misdemeanor, the government chose to proceed against this defendant by indictment by grand jury, rather than by the more flexible means of an information. Having so elected, it is bound by the rules governing that method of accusation.

A word needs to be said about one sentence in this Court's previous opinion. At 190 F.Supp. 604, 608, the Court remarked the stock certificate book was of little probative value because it was "incomplete on its face as to one transaction known to have occurred." The critical problem referred to, however, is there was only one such transaction and this was not recorded, thus raising a question as to whether any such transaction would have been recorded. Nevertheless, a ruling on this issue must await the new trial.

The motion is denied and a new trial will be ordered.

Submit order.