**UNITED STATES of America,**
**Plaintiff,**

v.

**Louis GOLDSTEIN and Selma Goldstein, Defendants.**

**Crim. A. No. 2222.**

United States District Court,
D. Delaware.

Sept. 10, 1973.

Bruce L. Thall, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Edmund N. Carpenter, 2nd, and David S. Swayze, Richards, Layton & Finger, Wilmington, Del., for defendants.

## OPINION

STAPLETON, District Judge:

On March 3, 1972 a grand jury indicted Louis Goldstein on three counts. Counts I and III charged that Mr. Goldstein and his wife, Selma, filed income tax returns for the years 1964 and 1966, respectively, which they did not believe to be true and correct as to every material matter in violation of Section 7206(1) of Title 26 of the United States Code. Count II charged Mr. Goldstein with willfully failing to make a timely income tax return for the year 1965 in violation of Section 7203 of Title 26 of the United States Code. The subsequent proceedings have been lengthy and warmly contested. After an unsuccessful attack on the composition of the grand jury and other extensive pre-trial proceedings, the case went to trial on June 11, 1973. The trial lasted three weeks. The jury acquitted both defendants on Counts I and III. However, it found Mr. Goldstein guilty on Count II.

Count II of the indictment reads as follows:

That Louis Goldstein during the calendar year 1965, while a resident of New Castle County, State of Delaware, had received a gross income of $25,954.05, that by reason of such income he was required by law following the close of the calendar year 1965 and on or before April 15, 1966 to make an income tax return to the District Director of Internal Revenue for the Internal Revenue District of Delaware at Wilmington, Delaware in the Judicial District of Delaware, stating specifically the items of his gross income and any deductions and credits to which he was entitled and that, well knowing all of the foregoing facts, he did willfully and knowingly fail to timely make said income tax return to said District Director of Internal Revenue or to any proper officer of the United States, in violation of Section 7203, Title 26, United States Code.

The government's evidence showed that Mr. Goldstein, a member of the bar of this Court, filed an application for extension of time to file his 1965 income tax return on Form 2688 on April 15, 1966. The following appeared in print at the foot of the application:

The Internal Revenue Service will indicate below whether the extension is granted or denied and will return the original of this application to you

---

NOTICE TO APPLICANT:

☐ Your application is approved. This form must be attached to your individual income tax return when filed as evidence that the extension was granted. Interest accrues at the rate of 6 percent per year on any tax due for the year from the regular due date of the return until paid.

☐ Your application cannot be considered since it was received in this office after the due date of the return. Your return should be filed without further delay. Please attach this form to the return to explain the delay in filing.

☐ Careful consideration has been given to the reasons and other data given in your application but it has been determined that the extension is not warranted. Your return should be filed by the reg-

ular due date or within 10 days of the date of signature of this notice, if the end of such 10-day period is later than the regular due date. The 10-day period granted shall constitute a valid extension of time for filing returns for purposes of elections required to be made on timely filed returns. Please attach this form to the return to explain the delay in filing.

☐ Other: _____

(Date) (District Director)

The government's evidence further indicated that this form was returned to Goldstein signed by the District Director and dated April 27, 1966. None of the boxes were checked. However, opposite the word "Other" appeared the following:

Other: Social Security Number Missing. REJECTED Items _____ and _____ incomplete. Resubmit within ten days if reconsideration desired.

The evidence showed that there had been no resubmission. The government introduced a stipulation stating that the defendant knew he had a duty to file the return on or before April 15, 1966, and other evidence establishing that Mr. Goldstein did not file his 1965 return until August 14, 1969, after an investigation of his tax returns had been commenced.

Mr. Goldstein testified that he did not timely file his 1965 return because the press of his business, personal and family problems, as well as the press of his accountant's business and personal problems did not permit the preparation of his return in sufficient time to file it when due.

Following the close of all the evidence, Goldstein moved for a judgment of acquittal. He urged that there had been a fatal variance between the indictment and the government's proof because the government's evidence established that Goldstein had no legal duty to file his 1965 return until May 7, 1966. The basis for this contention was an argument that the law provided an automatic ten day extension for any taxpayer who filed a timely application for an extension and was unsuccessful in obtaining one. In support of this position Goldstein referred the Court to Revenue Ruling 64-214 which reads as follows:

Section 6081. EXTENSION OF TIME FOR FILING RETURNS

Concern has been expressed by taxpayers as to the validity of elections made in income tax returns filed after the regular due date but within the ten-day period granted in the denial of applications for extensions of time to file.

To be effective, certain elections made at the option of the taxpayer are required to be made in a timely filed return (including any legally extended period in which to file). When an application for extension of time to file (Form 2688 for individuals and Form 2758 for fiduciaries, partnerships, and small business corporations) is denied, the return must be filed by the later of the regular due date or ten days from the date of the denial.

Accordingly, elections required to be made within the time prescribed by law (including any extension thereof) for filing the return are timely made when the return is filed within the ten-day period granted on Forms 2688 and 2758.

The government did not refer the Court to any other authority on this subject. It asserted, however, that if May 7th were the relevant date there still had been no fatal variance. The Court reserved its ruling on the defendant's motion for judgment of acquittal pursuant to Rule 29(b) of the Federal Rules of Criminal Procedure.

Mr. Goldstein asked the Court to charge the jury as follows:

There is unrebutted evidence in the record of this case that Louis Goldstein timely filed a Form 2688, Request for Extension, on April 15,

1966, with respect to the filing of his 1965 Federal income tax return. I instruct you as a matter of law that under the regulations in force in 1964, the timely filing of such a Request automatically extended the due date for the filing of the 1965 Federal income tax return of Louis Goldstein until May 7, 1966. Accordingly, in the course of your deliberations with regard to Count II, you should substitute the date of May 7, 1966 for the date of April 15, 1966 which appears in the recitation of that Count on the face of the Indictment, and you should weigh and consider the evidence before you pertaining to that Count in light of the amended date.[1]

The instructions submitted by the government prior to the motion for acquittal were drawn on the theory that Mr. Goldstein's 1965 return had been due on April 15, 1966. The government did not object, however, to the Court's charging as the defense had requested. The Court charged the jury in part as follows:

> With respect to the second element, the defendant has likewise not contested that his return for the year 1965 was not filed by the date required by law. I should explain to you that while the indictment states that the time required by law was April 15, 1966, it is conceded that the defendants filed an application for extension on April 15, 1966 which was denied on April 27, 1966. Under these circumstances the defendants were not required by law to file their return for 1965 until May 7, 1966. Accordingly, the relevant date with respect to this Count is May 7, 1966 and I shall hereafter use that date when referring to the filing time required by law.

* * * * * *

> Mr. Goldstein has testified that he did not timely file because the press of his business, personal and family problems and the press of his accountant's business and personal problems did not permit preparation of his return in sufficient time to file on the date required by law. If for these or any other reasons he put his return and the preparation therefor out of his mind until it was not possible to meet his obligation to file on May 7, 1966 he cannot be found to have acted "willfully" within the meaning of the statute. Similarly, if he in fact believed that his accountant was making the necessary preparations to file a timely return and retained that belief until it was not possible to file a timely return, he cannot be found to have acted willfully. On the other hand, if you find beyond a reasonable doubt that Mr. Goldstein deliberately and intentionally persisted in a course of conduct calculated to disable him and his accountant from preparing a return for timely filing, that finding would support the conclusion that he acted with bad purpose, intending not to fulfill the obligation of timely filing which he has testified that he knew he had.

> In attempting to ascertain Mr. Goldstein's state of mind from all the evidence you should keep in mind that the question involved here is his state of mind on and during the period of time leading up to May 7, 1966. Evidence of subsequent events concerning the return for 1965 has been admitted into evidence because subsequent events may in some instances shed light on the state of mind of a person at a preceding time, but evidence of subsequent events should be considered by you only if you consider that

---

1. Accordingly, defendant's position at the prayer conference stage of the case was that the case should be withdrawn from the jury because the proof had materially varied from the charge of willful failure to file on April 15, 1966, but that if the Court did submit the case to the jury, it should be charged that the relevant period on the issues of knowledge and willfulness was the period preceding May 7, 1966.

evidence relevant to Mr. Goldstein's state of mind on and during the period leading up to May 7, 1966.

The jury's verdicts were returned late in the evening of June 29, 1973, and the Court on the following morning entered an order denying defendant Goldstein's motion for a judgment of acquittal on Count II.[2] On July 3, 1973 defendant Goldstein filed a "Motion for Judgment of Acquittal and Motion in Arrest of Judgment" pursuant to Rules 29(c) and 34 of the Federal Rules of Criminal Procedure. This motion is currently before the Court for decision.

In support of his renewed motion under Rule 29(c) Goldstein argues, among other things, that there was a fatal variance because the government's evidence tended to show that if a crime was committed by Mr. Goldstein in connection with the late filing of his 1965 return, it occurred on May 7, 1966 rather than on April 15, 1966, as alleged in the indictment. In the alternative, Goldstein argues in support of his motion in arrest of judgment that the Court improperly amended the indictment and thereby lost jurisdiction before the jury's verdict was returned on Count II. Goldstein does not, and in this Court's judgment cannot, argue that the indictment did not give fair notice of the crime charged or that it was too indefinite to provide protection in the event of a subsequent prosecution dealing with the same subject matter. He does, however, argue that the record provides no assurance that the evidence upon which he was convicted by the petit jury was submitted to and considered by the grand jury.

■■ The first question for decision is whether the filing date required by law on the facts of this case was April 15th or May 7th.[3] Section 6072 of Title 26 of the United States Code provides that returns of this character "made on the basis of the calendar year shall be filed on or before the 15th day of April following the close of the calendar year." Section 6081, however, provides in relevant part as follows:

The Secretary or his delegate may grant a reasonable extension of time for filing any return, declaration, statement, or other document required by this title or by regulations.

Pursuant to Section 6081, the Secretary has promulgated Regulation 1.-6081–1 entitled "Extension of Time for Filing Returns." The version of that regulation in effect in 1966 is appended hereto as Appendix A. It provides that "District Directors . . . are authorized to grant a reasonable extension of time for filing any return." The regulation then goes on to provide that the taxpayer desiring an extension of time must file an application therefor, on Form 2688 or by letter, on or before the due date of the return.

Regulation 1.6081–1, Revenue Ruling 64–214, and the text of the concluding portion of Form 2688, when read together, evidence an administrative procedure

---

2. The Court rejected Mr. Goldstein's variance argument at this stage on the authority of United States v. Doelker, 327 F.2d 343 (6th Cir. 1964).

3. If April 15, 1966 were the date required by law, this would raise substantial problems which are not presented if May 7, 1966 is the correct date. Neither Section 7203 alone, nor Section 7203 read in conjunction with any other statutory provision to which the Court's attention has been drawn, appears to impose criminal sanctions for willful violation of a continuing duty to file after the "date required by law" has passed. Accordingly, if a violation occurs, it occurs on "the date required by law." *Cf.* United

States v. Figurell, 462 F.2d 1080 (3rd Cir. 1972). In this case the jury was charged without government objection, that May 7, 1966 was the relevant date and it found that he had the requisite intent on that date. It may or may not have found that the requisite state of mind existed on April 15th. If April 15th were the date required by law, the jury would have convicted Mr. Goldstein of conduct that was not a crime. While I believe a defendant in this context could consent to an amendment of an indictment so long as the indictment, as amended, alleged a crime, I do not think a defendant can, by consent, make conduct a crime which would not otherwise be a crime.

having two characteristics which are important in the context of this case. First, as of The Spring of 1966, District Directors had been delegated the authority to grant reasonable extensions of time to file returns based on considerations other than the merits of the application. Specifically, they were authorized to, and did, grant reasonable extensions of time necessary to permit the administrative system to operate without exposing petitioning taxpayers to the consequences of late filing in the meanwhile. Second, the administrative system provided only for consideration of extension applications filed by taxpayers who were not in default at the time of the filing of their application.

■ In this context, I conclude that the District Director was authorized under Section 6081 of Title 26 of the United States Code to grant the extension which Mr. Goldstein claims he received and (2) that the notation contained on the form returned to Mr. Goldstein can only be read to mean that the District Director exercised that authority in this instance.

■ There is no dispute that Mr. Goldstein filed a timely application for extension. The District Director responded that he would not grant the extension requested because Mr. Goldstein had failed to include his social security number, but informed him that he could resubmit the completed application within ten days if he wished to pursue the matter. If the District Director consid-

ered Mr. Goldstein to be in default on April 27, 1966, when he signed and returned Form 2688, the permission for resubmission would be meaningless. Accordingly, I conclude that the District Director's intent must have been to extend the period for the filing of a returned or a renewed application for extension until May 7, 1966.

■ It follows that, so far as the tax law is concerned, the jury was properly instructed concerning "the date required by law." The jury found the defendant guilty of willfully failing to file his 1965 tax return by May 7, 1966 and the record provides ample evidence from which the jury could properly so conclude.[4] The jury's verdict, accordingly, must stand unless there was a fatal variance between the indictment and the proof or unless the Court's charge constituted an implied, impermissible amendment to the indictment.

■ The rules governing the content of indictments, variances, and amendments are designed to protect three important rights: the right under the Fifth Amendment not to be twice put in jeopardy for the same offense, the right under the Sixth Amendment to fair notice of the criminal charge one will be required to meet, and the right granted by the Fifth Amendment, and sometimes by statute, not to be held to answer for certain crimes except upon a presentment or indictment returned by a grand jury.[5] These rules must be applied in all cases in a way which will preserve

---

4. While the defendant contends otherwise, the Court is convinced that the evidence warranted a finding that Goldstein acted throughout the relevant period in conscious and deliberate disregard of his obligation to make a timely return. The filing of an application for an extension on April 15th did not compel a contrary conclusion as Goldstein suggests. The jury could have concluded that the application contained misstatements of fact; it was not renewed after the application was rejected; the return was not prepared during the twenty-two day extension granted by the District Director; and Goldstein did not in fact file the return until August of 1969 after he knew he was

under investigation. The jury might well have concluded from these facts and from the background from which they arose that Goldstein did not intend to file a timely return despite his knowledge of the requirements of the law, and that he filed an application for extension not in an attempt to comply with the law but solely in an attempt to postpone any possible day of reckoning.

5. United States v. DeCavalcante, 440 F.2d 1264 (3rd Cir. 1971); United States v. Bryan, 483 F.2d 88 (Third Circuit 1973); United States v. Smith, 474 F.2d 844 (3rd Cir. 1973); Gaither v. United States, 134 U.S.App.D.C. 154, 413 F.2d 1061 (1969).

these rights from invasion; they should not be applied to defeat justice fairly administered when these rights have not been placed in jeopardy.

■■ The rule that a material variance between the indictment and the proof requires reversal and an immaterial variance does not is founded on the necessity of preserving the first two of these three rights. For this reason, a variance will be considered immaterial in any case in which it appears that the defendant's right to notice and fair opportunity to defend have not been infringed and the record is such as to protect him against another prosecution for the same offense. Conversely, a variance will be considered material if the defense has been substantially prejudiced or if the situation creates double jeopardy problems.[6] In this case, as Mr. Goldstein concedes, nothing which has occurred infringes his right to fair notice or his right to be protected against twice being put in jeopardy for the same offense. Defendant was charged with willfully failing to timely file his 1965 tax return; he was given fair notice of that charge and fair opportunity to prepare and defend against it; and, if his conviction stands, he cannot again be tried for the same crime.[7] It follows that Mr. Goldstein's conviction must stand unless the Court's charge constituted an impermissible constructive amendment to the indictment.

■ The cases which prohibit express or constructive amendments to indictments, unlike those dealing with variances, are founded on the necessity of protecting a right to grand jury indictment. While there is language in some of these cases suggesting several mechanical tests for determining what constitutes an impermissible amendment,[8] the underlying policy is to foreclose the conviction of a defendant "on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him."[9] This policy "is effectuated by preventing the prosecution from modifying the theory and evidence upon which the indictment is based."[10] The proper test is whether there is reasonable assurance from the face of the indictment that the grand jury found probable cause on each of the essential elements which underlie the petit jury's verdict.[11] Thus, where the difference between the proof and the indictment is

6. United States v. Bryan, *supra.*

7. If the conviction were set aside, a different situation would, of course, be presented. See United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1963); United States v. Williams, 412 F.2d 625 (3rd Cir. 1969).

8. Some of these cases suggest that amendments to the "charging portion" of an indictment will not be permitted, while changes in other portions will be considered immaterial. The defendant in this case argues that changes as to date and time are fatal when time "is of the essence of the offense," but not otherwise. I find these to be unsatisfactory tests. There are, of course, numerous cases indicating that the government is not limited to proof of the commission of the offense on the identical date stated in an indictment if proof is offered showing that the offense alleged in the indictment occurred on a date sufficiently close to the date stated so that the defendant is not prejudiced or misled. *E. g.*, United States v. Doelker, 327 F.2d 343 (6th Cir. 1964) (involving a criminal charge of failing to file a timely tax return). While many statements of this rule do include a caveat for statutes where time is a material element of the offense ["as where the act done is unlawful only during certain seasons, on certain days, or at certain hours of the day" State v. DuFour, 123 Minn. 451, 143 N.W. 1126 (Sup.Ct.1913)], the courts which have been confronted with such cases have applied the general rule where no actual prejudice to the defendant resulted and where the test suggested in the text above would not require a judgment of acquittal in order to protect a right to grand jury indictment. State v. DuFour, *supra;* Hoover v. State, 56 Md. 584 (1881); The People v. Ball, 42 Barbour 324, 325 (N.J.1864); State v. Eskeridge, 31 Tenn. 413 (1852); 5 Anderson, Wharton's Criminal Law & Proc. § 2062 (1957).

9. Russell v. United States, 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962).

10. United States v. Silverman, 430 F.2d 106, 110 (2nd Cir. 1970).

11. United States v. DeCavalcante, 440 F.2d 1264 (3rd Cir. 1971).

such that there is no reasonable assurance on the face of the indictment that the grand jury considered and reached an affirmative conclusion upon the existence of each of the essential elements of the crime of which the petit jury was asked to convict, the indictment has been amended.

When the facts of this case are analyzed with this standard in mind, it becomes apparent that it differs substantially from the multitude of cases in which the government has properly been permitted to go to the jury on a charge that proof of the commission of the offense charged on any date reasonably close to the date alleged will suffice. Where, for example, a grand jury indicts A for transporting a car across state lines on December 1, willfully and with knowledge that it is stolen, and the proof shows that the transportation occurred on December 15th, there is reasonable assurance that the grand jury found probable cause to believe that the car was transported and that the defendant had the required state of mind at the time of that movement. Accordingly, a conviction is allowed to stand in the absence of a showing that the preparation of the defense was prejudiced (i. e. there is no material amendment or variance).[12] Where, as here, however, the indictment charges willfulness only in connection with the failure to file on the date required by law and can fairly be read to indicate that the grand jury focused only on the accused's state of mind on and preceding April 15th, a different situation exists. When the petit jury, in such a situation, is asked to find the requisite state of mind on and preceding May 7th, there is no reasonable assurance that the grand jury's deliberations on the essential elements correspond with those of the petit jury. In Mr. Goldstein's particular case, the situation on May 7, 1966 was different than on April 15, 1966. On April 15th Goldstein had filed an application for extension. By May 7th, Goldstein had had an additional twenty-two days to get his return together and had still failed to comply with the law.

■ Because of this lack of assurance of a correlation between the grand jury deliberations and those of the petit jury, I conclude that there was an amendment to the indictment here and that an arrest of judgment would be required if Mr. Goldstein had had a right to be prosecuted only by indictment. A further question remains, however, because Mr. Goldstein did not have that right under the Constitution,[13] by statute [14] or by rule.[15]

■ No case which the defendant has cited, and no case which the Court has found, requires an arrest of judgment in a context similar to that now before this Court. The cases foreclosing amendments of indictments are each grounded on the necessity of protecting a right to grand jury indictment.[16] Convictions are overturned in these cases without reference to actual prejudice in order to prevent circumvention of that right. However, where that right does not exist and the prosecution has

12. See e. g. Stewart v. United States, 395 F.2d 484 (8th Cir. 1968).

13. The Fifth Amendment guarantee of trial upon indictment attaches only to "capital or other infamous crimes" which have been defined as crimes conviction for which will subject the defendant to a possible term of incarceration in a penitentiary. Mackin v. United States, 117 U.S. 348, 6 S.Ct. 777, 29 L.Ed. 909 (1886). 18 U.S.C. § 4083 limits confinement in a United States penitentiary to cases where imprisonment is for a term greater than one year. Since the maximum period of imprisonment to which defendant could be subjected is one year, 26 U.S.C. § 7203, no constitutional right to trial upon indictment attached. See also F.R.Cr.Proc. 7(a).

14. Compare Russell v. United States, 369 U. S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).

15. This Count could have been brought by information under Rule 7(a). Undoubtedly, the United States Attorney chose to proceed by indictment because indictment was required on Counts I and III.

16. E. g., Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887) ; Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L. Ed.2d 252 (1960) ; Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).

properly been by information amendments are freely permitted at any time prior to verdict in the absence of notice or double jeopardy problems.[17]

 The precise question presented in this case is whether a defendant who has no right to grand jury indictment and who has been convicted of a crime after fair notice and a fair trial, may successfully attack his conviction on the ground that the prosecuting authority elected to proceed by indictment and there may have been a difference between the grand jury deliberations on an essential element of the crime charged and the similar deliberations of the petit jury.

This Court sees no policy reason why it should interfere with the jury verdict in this case. If there is to be such interference it must be premised not on any policy considerations related to a right to grand jury indictment but rather on the proposition that such a result is required by the fact that Rule 7(e) authorizes amendments of informations at any time before verdict "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced" while it remains silent on the subject of amendments to indictments.

While it would be possible to read a negative inference into Rule 7(e), two factors weigh against doing so. First, nothing in the Comments suggests that the drafters addressed themselves to the problem now before this Court and the absence of a rule on amendments of indictments may as readily be taken as a reference of the matter to case development as an unspoken prohibition against all such amendments.[18] Second, the drafters, in line with the modern view on the consequence of technical errors in criminal proceedings, have elsewhere indicated that rule construction based on factors other than simplicity, fairness and expedition is to be avoided. Rule 2 provides:

These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay.

Assuming, *arguendo*, however, that Rule 7(e) should be read as a prohibition against any amendment to an indictment, it does not follow that Mr. Goldstein is entitled to a vacation of the judgment of conviction. Rule 52(a) provides as follows:

(a) Harmless error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.[19]

 Some rights conferred by the Constitution or by statute are considered so basic that prejudice is presumed to flow from their violation.[20] Violations of other constitutional rights are "disregarded" under Rule 52 only where the Court can declare that there was no prejudice "beyond a reasonable doubt."[21] Generally, violations of procedural rights conferred by the federal rules are

---

17. Rule 7(e); Muncy v. United States, 289 F. 780 (4th Cir. 1923).

18. The silence of Rule 7(e) on the permissibility of amendments to indictments has clearly not been taken as a prohibition on all such amendments. The prior case law dealing with express amendments deemed "matters of form" rather than "matters of substance" is still followed. *E. g.* Stewart v. United States, 395 F.2d 484 (8th Cir. 1968); United States v. Buble, 440 F.2d 405 (9th Cir. 1971).

19. While more frequently applied in an appellate context, Rule 52 governs disposition of post-trial motions at the district court level. *Cf.* United States v. Stoehr, 100 F. Supp. 143 (M.D.Pa.1951), aff'd, 196 F.2d 276 (3rd Cir. 1952); 3 Wright, Fed.Prac. & Proc. § 851 (1969).

20. *E. g.*, Payne v. Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Bruno v. United States, 308 U.S. 287, 294, 60 S.Ct. 198, 84 L.Ed. 257 (1939).

21. *E. g.*, Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

disregarded whenever it appears to the Court that there has been a fair trial and a fair adjudication of guilt.[22]

 In the context of this suit, Rule 7 did not confer upon Mr. Goldstein a right to grand jury indictment. Indeed, it conferred a right upon the United States Attorney to proceed by information. If any right under Rule 7 had been violated in this case it is the right to be free from amendments to the charge once the prosecuting authority has elected to proceed by indictment rather than information. That right if it exists, does not, in this Court's judgment, rise to sufficient stature to warrant a prejudice *per se* rule. When an amendment to a misdemeanor indictment may have adversely affected the accused in the preparation and presentation of his case, interference with an adverse jury verdict is clearly required. Where there is no such prejudice, however, the verdict should stand.[23]

This case falls in the latter category. Defendant's motions will be denied.

## APPENDIX A

### Extensions of Time for Filing

§ 1.608–1. **Extension of time for for filing returns.**

(a) *In general.* District directors, including the Director of International Operations, are authorized to grant a reasonable extension of time for filing any return, declaration, statement, or other document which relates to any tax imposed by subtitle A of the Code and which is required under the provisions of subtitle A or F of the Code or the regulations thereunder. However, except in the case of taxpayers who are abroad, such extensions of time shall not be granted for more than six months. Except in the case of declarations of estimated income tax, an extension of time for filing an income tax return does not operate to extend the time for the payment of the tax, or any installment thereof, unless so specified in the extension. For extension of time for filing declarations of estimated tax, see §§ 1.-6073–4 and 1.6074–3. For extension of time for paying tax, see § 1.6161–1.

(b) *Application for extension of time* —(1) *In general.* A taxpayer desiring an extension of the time for filing a return, statement, or other document shall submit an application therefor on or before the due date of such return, statement, or other document. Except as provided in subparagraph (3) of this paragraph, such application shall be made to the internal revenue officer with whom such return, statement, or other document is required to be filed. Such application shall be in writing, properly signed by the taxpayer or his duly authorized agent, and shall clearly set forth (i) the particular tax return, information return, statement, or other document, including the taxable year or period thereof, with respect to which the extension of the time for filing is desired, and (ii) a full recital of the reasons for requesting the extension to aid such internal revenue officer in determining the period of extension, if any, which will be granted.

(2) *Additional information in the case of Form 1040.* In addition to the information required under subpara-

---

22. Sullivan v. United States, 414 F.2d 714 (9th Cir. 1969) ; Bayless v. United States, 381 F.2d 67 (9th Cir. 1967) ; Baker v. United States, 131 U.S.App.D.C. 7, 401 F.2d 958 (1968).

23. This Court and one other have previously held that an indictment in a case which could have been prosecuted by information cannot be amended where the amendment would violate the defendant's right to fair notice and fair opportunity to prepare a de-

fense. United States v. Lippi, 190 F.Supp. 604, on reargument, 193 F.Supp. 441 (D. Del.1961) ; United States v. Fischetti, 450 F.2d 34 (5th Cir. 1971). One commentator has concluded that the opposite result would be the correct one where, as here, there was no possible prejudice to the preparation of the defense and the defendant's argument rests solely on the right to be tried on the very indictment returned by the grand jury. 8 Moore, Fed.Prac. ¶ 705[1] (1972 Supp.).

graph (1) of this paragraph, the application of a taxpayer desiring an extension of the time for filing an individual income tax return on Form 1040 for any taxable year beginning after December 31, 1958, shall also set forth (i) whether an income tax return has been filed on or before its due date for each of the three taxable years immediately preceding the taxable year of such return, and if not, the reason for each failure, and (ii) whether the taxpayer was required to file a declaration of estimated tax for the taxable year of such return, and if so, whether each required estimated tax payment was made on or before its due date. For purposes of this subparagraph a return is considered as filed on or before its due date if it is filed on or before the applicable date provided in section 6072 or on or before the last day of the period covered by an extension of time granted pursuant to the provisions of section 6081, and each required payment of estimated tax is considered as paid on or before its due date if it is paid on or before the applicable date provided in section 6153 or on or before the last day of the period covered by an extension of time granted pursuant to the provisions of section 6161.

(3) *Information returns filed with service Center.* An application for an extension of the time for filing any information return required to be filed with an Internal Revenue Service Center shall state the location of the Service Center with which such return will be filed. Such application shall be made to the internal revenue officer with whom the applicant is required to file an income tax return or with whom the applicant would be required to file an income tax return if such a return were required of him.

(4) *Taxpayer unable to sign.* In any case in whch a taxpayer is unable, by reason of illness, absence, or other good cause, to sign a request for an extension, any person standing in close personal or business relationship to the taxpayer may sign the request on his behalf, and shall be considered as a duly authorized agent for this purpose, provided the re-quest sets forth the reasons for a signature other than the taxpayer's and the relationship existing between the taxpayer and the signer.

(5) *Form of application.* The application for an extension of the time for filing a return, statement or other document may be made in the form of a letter. However, in the case of an individual income tax return on Form 1040, the application for an extension of the time for filing may be made either on Form 2688 or in the form of a letter. [Reg. § 1.6081–1.]

[*T.D.* 6364, 2–13–59. *Amended by T. D.* 6371, 4–6–59, *T.D.* 6436, 12–30–59, *and T.D.* 6581, 12–5–61.]