## STIRONE *v.* UNITED STATES.

No. 35.   Argued November 9–10, 1959.—Decided January 11, 1960.

*Michael von Moschzisker* argued the cause for petitioner.   With him on the brief was *Vincent M. Casey.*

*Wayne G. Barnett* argued the cause for the United States.   On the brief were *Solicitor General Rankin, Assistant Attorney General Wilkey, Ralph S. Spritzer, Beatrice Rosenberg* and *Theodore George Gilinsky.*

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner Nicholas Stirone was indicted and convicted in a federal court for unlawfully interfering with interstate commerce in violation of the Hobbs Act.[1] The crucial question here is whether he was convicted of an offense not charged in the indictment.

So far as relevant to this question the indictment charged the following:

From 1951 until 1953, a man by the name of William G. Rider had a contract to supply ready-mixed concrete from his plant in Pennsylvania to be used for the erection of a steel-processing plant at Allenport, Pennsylvania. For the purpose of performing this contract Rider

"caused supplies and materials [sand] to move in interstate commerce between various points in the United States and the site of his plant for the manufacture or mixing of ready mixed concrete, and more particularly, from outside the State of Pennsylvania into the State of Pennsylvania."

The indictment went on to charge that Stirone, using his influential union position,

"did . . . unlawfully obstruct, delay [and] affect interstate commerce between the several states of

---

[1] 62 Stat. 793, 18 U. S. C. § 1951.

"(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

"(b) As used in this section—

"(2) The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

the United States and the movement of the aforesaid materials and supplies in such commerce, by extortion . . . of \$31,274.13 . . . induced by fear and by the wrongful use of threats of labor disputes and threats of the loss of, and obstruction and prevention of, performance of his contract to supply ready mixed concrete."

The district judge, over petitioner's objection as to its materiality and relevancy, permitted the Government to offer evidence of an effect on interstate commerce not only in sand brought into Pennsylvania from other States but also in steel shipments from the steel plant in Pennsylvania into Michigan and Kentucky. Again over petitioner's objection the trial judge charged the jury that so far as the interstate commerce aspect of the case was concerned, Stirone's guilt could be rested either on a finding that (1) sand used to make the concrete "had been shipped from another state into Pennsylvania" or (2) "Mr. Rider's concrete was used for constructing a mill which would manufacture articles of steel to be shipped in interstate commerce . . ." from Pennsylvania into other States. On motion of petitioner for arrest of judgment, acquittal or new trial, the District Court held that "A sufficient foundation for introduction of both kinds of proof was laid in the indictment." 168 F. Supp. 490, 495. The Court of Appeals affirmed, all the judges agreeing that interference with the sand movements into Pennsylvania was barred by the Hobbs Act. 262 F. 2d 571. Judge Hastie and Chief Judge Biggs disagreed with the court's holding that Stirone could be tried and convicted for interference with the possible future shipments of steel from Pennsylvania to Michigan and Kentucky. 262 F. 2d, at 578, 580. They were of opinion that no interference with interstate steel shipments was charged in the indictment and that in any event it is an unreasonable extension of the Act to make a federal offense out of

extortion from a man merely because he is supplying concrete to build a mill which after construction will produce steel, a part of which may, if processed, move in interstate commerce.

We agree with the Court of Appeals that Rider's dependence on shipments of sand from outside Pennsylvania to carry on his ready-mixed concrete business entitled him to the Hobbs Act's protection against interruption or stoppage of his commerce in sand by extortion of the kind that the jury found the petitioner had committed here. That Act speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence. The Act outlaws such interference "in any way or degree." 18 U. S. C. § 1951 (a). Had Rider's business been hindered or destroyed, interstate movements of sand to him would have slackened or stopped. The trial jury was entitled to find that commerce was saved from such a blockage by Rider's compliance with Stirone's coercive and illegal demands. It was to free commerce from such destructive burdens that the Hobbs Act was passed. *United States* v. *Green,* 350 U. S. 415, 420.

Whether prospective steel shipments from the new steel mills would be enough, alone, to bring this transaction under the Act is a more difficult question. We need not decide this, however, since we agree with the dissenting judges in the Court of Appeals that it was error to submit that question to the jury and that the error cannot be dismissed as merely an insignificant variance between allegation and proof and thus harmless error as in *Berger* v. *United States,* 295 U. S. 78. The crime charged here is a felony and the Fifth Amendment requires that prosecution be begun by indictment.

Ever since *Ex parte Bain,* 121 U. S. 1, was decided in 1887 it has been the rule that after an indictment has been

returned its charges may not be broadened through amendment except by the grand jury itself. In that case, the court ordered that some specific and relevant allegations the grand jury had charged be stricken from the indictment so that Bain might be convicted without proof of those particular allegations.[2] In holding that this could not be done, Mr. Justice Miller, speaking for the Court, said:

> "If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed." 121 U. S. 1, 10.

The Court went on to hold in *Bain:*

> "that after the indictment was changed it was no longer the indictment of the grand jury who presented it. Any other doctrine would place the rights of the citizen, which were intended to be protected

---

[2] Bain was indicted for making a false statement "with intent to deceive *the Comptroller of the Currency and* the agent appointed to examine the affairs of said association . . . ." After sustaining demurrers of Bain to the indictment, the trial court went on to say that "thereupon, on motion of the United States, by counsel, the court orders that the indictment be amended by striking out the words *'the Comptroller of the Currency and'* therein contained." By this amendment it was intended to permit conviction of Bain without proof that he had deceived the Comptroller as the grand jury had charged.

by the constitutional provision, at the mercy or control of the court or prosecuting attorney . . . ." 121 U. S. 1, 13.

The *Bain* case, which has never been disapproved, stands for the rule that a court cannot permit a defendant to be tried on charges that are not made in the indictment against him. See also *United States* v. *Norris,* 281 U. S. 619, 622. Cf. *Clyatt* v. *United States,* 197 U. S. 207, 219, 220. Yet the court did permit that in this case. The indictment here cannot fairly be read as charging interference with movements of steel from Pennsylvania to other States nor does the Court of Appeals appear to have so read it. The grand jury which found this indictment was satisfied to charge that Stirone's conduct interfered with interstate importation of sand. But neither this nor any other court can know that the grand jury would have been willing to charge that Stirone's conduct would interfere with interstate exportation of steel from a mill later to be built with Rider's concrete. And it cannot be said with certainty that with a new basis for conviction added, Stirone was convicted solely on the charge made in the indictment the grand jury returned. Although the trial court did not permit a formal amendment of the indictment, the effect of what it did was the same. And the addition charging interference with steel exports here is neither trivial, useless, nor innocuous. Compare *Ford* v. *United States,* 273 U. S. 593, 602; *Goto* v. *Lane,* 265 U. S. 393, 402. While there was a variance in the sense of a variation between pleading and proof, that variation here destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error. Compare *Berger* v.

*United States,* 295 U. S. 78. The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge.[3]   Thus the basic protection the grand jury was designed to afford is defeated by a device or method which subjects the defendant to prosecution for interference with interstate commerce which the grand jury did not charge.

Here, as the trial court charged the jury, there are two essential elements of a Hobbs Act crime: interference with commerce, and extortion.   Both elements have to be charged.   Neither is surplusage and neither can be treated as surplusage.   The charge that interstate commerce is affected is critical since the Federal Government's jurisdiction of this crime rests only on that interference.   It follows that when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened.   The right

---

[3] "Yet the institution [the grand jury] was adopted in this country, and is continued from considerations similar to those which give to it its chief value in England, and is designed as a means, not only of bringing to trial persons accused of public offences upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it comes from government, or be prompted by partisan passion or private enmity.   No person shall be required, according to the fundamental law of the country, except in the cases mentioned, to answer for any of the higher crimes unless this body, consisting of not less than sixteen nor more than twenty-three good and lawful men, selected from the body of the district, shall declare, upon careful deliberation, under the solemnity of an oath, that there is good reason for his accusation and trial." *Ex parte Bain,* 121 U. S. 1, 11.   See also *Costello* v. *United States,* 350 U. S. 359, 362, 363, n. 6.

to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment. Here, as in the *Bain* case, we cannot know whether the grand jury would have included in its indictment a charge that commerce in steel from a nonexistent steel mill had been interfered with. Yet because of the court's admission of evidence and under its charge this might have been the basis upon which the trial jury convicted petitioner. If so, he was convicted on a charge the grand jury never made against him. This was fatal error. Cf. *Cole* v. *Arkansas,* 333 U. S. 196; *De Jonge* v. *Oregon,* 299 U. S. 353.

*Reversed.*