**UNITED STATES of America, Plaintiff,**

v.

**Elmer Joseph HOWE, Jr., Defendant.**

**Crim. A. No. 23913-2.**

United States District Court,
W. D. Missouri, W. D.

Jan. 30, 1973.

---

Joseph Ciolino, Asst. U. S. Atty. Gen., Kansas City, Mo., for plaintiff.

James R. Wyrsch, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER DENYING MOTION TO DISMISS INDICTMENT

COLLINSON, District Judge.

The indictment charges in separate counts two violations of 18 U.S.C. § 1951 (1970). Defendant has moved the Court to dismiss the indictment. Four grounds for dismissal are suggested by defendant in support of his motion.

First, defendant attacks the sufficiency of the indictment, asserting that it does "not charge in plain and concise language the facts constituting the issue and material elements of the offense attempted to be therein charged so as to enable the defendant to prepare his defense." Defendant also suggests that the indictment contravenes the Sixth Amendment requirement that an accused be informed of the nature and cause of an accusation against him.

██ Rule 7(c) of the Federal Rules of Criminal Procedure provides, in part:

The indictment . . . shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.

Not only does Rule 7(c) implement the Sixth Amendment right of which defendant speaks, but it also implements two valuable Fifth Amendment rights:

Rule 7(c) of the Federal Rules of Criminal Procedure requires that the indictment contain "a plain, concise and definite written statement of the essential facts constituting the offense charged." This requirement performs three constitutionally required functions. It permits the accused "to be informed of the nature and cause of the accusation" as required by the Sixth Amendment. It prevents any person from being "subject for the same offense to be twice put in jeopardy of life or limb" as required by the Fifth Amendment. Finally, it preserves the protection given by the Fifth Amendment from being "held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." United States v. Silverman, 430 F.2d 106, 110 (2d Cir. 1970), cert. denied 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed. 2d 123 (1971).

If an indictment is sufficient under Rule 7(c), it is also sufficient under the Fifth and Sixth Amendments.

■ The sufficiency of an indictment under Rule 7(c) is measured by two criteria: (1) whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and (2) in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. Russell v. United States, 369 U.S. 749, 763–764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); Wheeler v. United States, 317 F.2d 615, 616 (8th Cir. 1963), quoting Hewitt v. United States, 110 F.2d 1, 6 (8th Cir.), cert. denied 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed. 1409 (1940).

■■ 18 U.S.C. § 1951 (1970), popularly referred to as the Hobbs Act, provides, in part:

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned nor more than twenty years, or both.
>
> (b) As used in this section—
>
> .    .    .    .    .    .
>
> (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

There are two basic elements in a Hobbs Act crime: interference with interstate commerce and extortion. Stirone v. United States, 361 U.S. 212, 218, 80 S. Ct. 270, 4 L.Ed.2d 252 (1960); United States v. Provenzano, 334 F.2d 678, 693 (3rd Cir.), cert. denied 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964). If we apply the statute's definition of "extortion," the elements in a Hobbs Act crime can be stated as follows:

(1) interference with interstate commerce;

(2) obtaining or attempting to obtain or conspiring to obtain property from another,

(3) with his consent,

(4) induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

[5] These elements are plainly and concisely alleged in both counts and in such detail as to fully apprise defendant of what he must be prepared to meet, thus satisfying the first criteria of sufficiency. Count I of the indictment charges that, about May 25, 1972, defendant induced the consent of Geraldine Higgenbotham by extortion to provide space in Jerre's Crest Tavern, Kansas City, Missouri, for defendant's coin-operated machines and to share the profits from those machines. Specifically, it is alleged that defendant threatened to have the tavern closed by the Kansas City Department of Liquor Control unless Higgenbotham consented to defendant's demands. This, the grand jury alleges, obstructed, delayed and affected commerce and "the movement of machines, material and supplies which had moved in interstate commerce for the said Jerre's Crest Tavern, a tavern in such commerce." Count II charges that, about June 20, 1972, defendant attempted to induce the consent of Richard Lamping by extortion to provide space in Leg's Lounge, Kansas City, Missouri, for defendant's coin-operated machines and to share the profits from those machines. Specifically, it is alleged that defendant threatened to do physical harm to Lamping's family and to have the tavern closed by the Kansas City Department of Liquor Control unless Lamping consented to defendant's demands. This, the grand jury alleges, obstructed, delayed, and affected commerce and "the movement of machines, materials and supplies which had moved in interstate commerce for the said Leg's Lounge, a tavern in such commerce."

The language of section 1951 contains without ambiguity all the elements necessary to plead a Hobbs Act crime. Hence, an indictment that is drafted substantially in the language of section 1951 would satisfy the first criteria of sufficiency. *See* Esperti v. United States, 406 F.2d 148, 150 (5th Cir., cert. denied 395 U.S. 938, 89 S.Ct. 2005, 23 L.Ed.2d 454 (1969). The language of this indictment closely follows the language of the statute.

Our summary statement of the indictment demonstrates that its allegations are supported by sufficient factual detail to satisfy the second criteria. Should criminal proceedings for a similar offense be instituted against defendant, a court would experience no difficulty in determining on the face of this indictment to what extent defendant could plead former jeopardy.

■ Defendant's second ground for dismissal consists of three contentions. First, defendant contends that the indictment does not state facts sufficient to constitute an offense in that "space" is not "property" within the meaning of section 1951. This suggestion is utterly frivolous. Counsel for defendant surely would not quibble with the dual propositions that any person who rents an office, or land, or a house has done little more than acquire "space" owned by another person and that by acquiring such "space" significant property rights attach. We note also that the Court of Appeals for the Ninth Circuit upheld a conviction under section 1951 on an indictment charging the appellant with having interfered with interstate commerce by having, through threats, obtained space in a bowling alley for a coin-operated pool table and a share of the profits from its operation. Battaglia v. United States, 383 F.2d 303 (9th Cir. 1967) cert. denied 390 U.S. 907, 88 S.Ct. 817, 19 L.Ed.2d 874 (1968). Defendant attempts to distinguish *Battaglia* on the ground that the pool table owned by the operator of the bowling alley had been damaged by the appellant. We fully discuss the facts of *Battaglia* below. It is enough to note here that defendant is confusing the elements of the offense charged in both cases. The fact that damage was done to the pool table in *Battaglia* went to show interference with interstate commerce and not the obtaining of "property," *viz.*, "space" for the appellant's pool table, by "actual or threatened force, violence, or fear."

■ Secondly, defendant also contends that the indictment fails to state an offense because the term "commerce" is not defined in the indictment. Both counts refer to "commerce" "as that term is defined in Section 1951 of Title 18, United States Code." The term is defined by subsection (b)(3) of the statute. The indictment's reference to the statute is more than adequate.

■ Thirdly, defendant asserts that the indictment does not allege facts sufficient to show that this Court has jurisdiction. Since the indictment alleges all the elements of an offense under section 1951, it unquestionably alleges sufficient facts for jurisdiction.

■ As a third ground for dismissal of the indictment, defendant suggests that section 1951 "is unconstitutional on its face, is violative of the due process clauses of the Fifth and Fourteenth Amendments because of vagueness and is violative of the Ninth and Tenth Amendments to the United States Constitution." It is far too late to question the constitutionality of section 1951. That matter has long been resolved. *E. g.*, Carbo v. United States, 314 F.2d 718, 733 (9th Cir. 1963), cert. denied 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964); United States v. Postma, 242 F.2d 488, 493 (2nd Cir.), cert. denied 354 U.S. 922, 77 S.Ct. 1380, 1 L.Ed.2d 1436 (1957); United States v. Varlack, 225 F.2d 665, 669–670 (5th Cir. 1955); Bianchi v. United States, 219 F.2d 182, 196 (8th Cir.), cert. denied 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249 (1955); Nick v. United States, 122 F.2d 660 (8th Cir.) (involving predecessor of § 1951), cert. denied 314 U.S. 687, 62 S.Ct. 304, 86 L.Ed. 550 (1941).

We note with some interest that defendant directs the Court's attention to the dissenting opinion of Mr. Justice Stewart in Perez v. United States, 402 U.S. 146, 157, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), apparently in support of his assertion that section 1951 violates the Ninth and Tenth Amendments. The *Perez* Court addressed the question whether Title II of the Consumer Credit Protection Act, 18 U.S.C. § 891 et seq. (1964 ed., Supp. V), was a permissible exercise by Congress of its powers under the Commerce Clause of the Constitution. Title II enacted federal criminal penalties for intrastate "loan sharking." Finding reasonable Congress' judgment that extortionate credit transactions, though purely intrastate, affect interstate commerce, the *Perez* Court upheld Title II against the Commerce Clause attack. Mr. Justice Stewart disagreed:

> Congress surely has power under the Commerce Clause to enact criminal laws to protect the instrumentalities of interstate commerce, to prohibit the misuse of the channels or facilities of interstate commerce, and to prohibit or regulate those intrastate activities that have a demonstrably substantial effect on interstate commerce. But under the statute before us a man can be convicted without any proof of interstate movement, of the use of the facilities of interstate commerce, or of facts showing that his conduct affected interstate commerce. I think the Framers of the Constitution never intended that the National Government might define as a crime and prosecute such wholly local activity through the enactment of federal criminal laws. 402 U.S. at 157, 91 S. Ct. at 1363.

It is evident beyond peradventure that Mr. Justice Stewart's dissent stands squarely in support of the constitutionality of section 1951, for no conviction may obtain under the statute without proof of interference with interstate commerce. We find no violation of the Ninth and Tenth Amendments.

■ Lastly, defendant suggests as a ground for dismissal that section 1951 is unconstitutional as applied to him because the "act was enacted to cover labor racketeering and did not envision the kind of acts alleged in the indictment." Defendant's completely unsupported and erroneous assertion as to the purpose of section 1951 is not persuasive:

> Undeniably the act was particularly aimed at labor racketeering, but by its terms is not so limited.[10] Racke-

10. The legislative history of the bill indicates that while most of the drafting problems presented by the bill related to its coverage of labor activities, the bill was broadly conceived of as part of a legislative plan to deter professional gangsterism. S.Rep. No. 1440, 73d Congress, 2d Session.

> teering in other areas is clearly included. The language of the statute provides fair warning and adequate notice that extortion in any area is included so long as the necessary effect upon commerce results.

Carbo v. United States, 314 F.2d 718, 732 (9th Cir. 1963), cert. denied 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964).

The *Carbo* court found section 1951 applicable to the professional boxing business; we find it applicable to the coin-operated vending machine business.

■ Since Count I of the indictment "states that the items involved had come to rest," defendant again concludes that section 1951 has been unconstitutionally applied to him. We disagree. Count I alleges that defendant "did knowingly and willfully obstruct, delay and affect commerce . . . and the movement of machines, materials and supplies which had moved in interstate commerce for the said Jerre's Crest Tavern. . . ." Even though all the items, whatever they may be, that had been transported to Jerre's Crest Tavern in interstate commerce had come to rest in Missouri, the Hobbs Act is still fully applicable.

Again we resort to the well reasoned opinion of Judge Madden in Battaglia v. United States, *supra,* rejecting the same argument based on similar facts. The appellant in *Battaglia* was also in the coin-operated vending machine business. When one of his customers purchased a pool table, which had traveled in interstate commerce, for his bowling alley, the appellant threatened to destroy the table and harm the customer's family if the customer did not remove the pool table and install one of the appellant's tables. The appellant was convicted under section 1951. On appeal to the Court of Appeals, he argued that the Government failed to show an obstruction or an effect upon interstate commerce because the pool table installed by the customer had come to rest; therefore, appellant reasoned that the later actions in relation to that table could not have affected interstate commerce. Judge Madden rejected this argument quoting from United States v. Stirone, 168 F.Supp. 490, 496 (W.D.Pa. 1957), aff'd 262 F.2d 571 (2d Cir. 1959), rev'd on other grounds 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). We also find persuasive the District Court's opinion in *Stirone*:

> [T]he power of Congress to regulate commerce is plenary and the power to regulate includes the power to protect commerce "no matter what the source of the dangers which threaten it." . . . Racketeering affecting interstate commerce is clearly within the federal control . . . and commerce may be affected even though the actual movement of goods has ceased and the character of the goods altered in the hands of the consumer. Since the act of Congress was intended to insure the free flow of articles in interstate commerce, the only criteria which this court may properly employ to determine whether the act is applicable are whether the channels of interstate commerce have been used and whether the free passage of articles therein has been threatened.

> . . . [A] *deliberate act which tends to prevent articles from being used once they have reached their destination after being shipped in interstate commerce dams up the stream of commerce and delays, obstructs and affects interstate commerce as surely as though the same act had cut off the supply at its source.* 168 F.Supp. at 496 (citations omitted) (emphasis added).

This position was adopted by the Court of Appeals for the Eighth Circuit several years before the *Stirone* case. Nick v. United States, *supra*; Hulahan v. United States, 214 F.2d 441, 445 (8th Cir.), cert. denied 348 U.S. 856, 75 S.Ct. 81, 99 L.Ed. 675 (1954). No matter how insignificant the interference with interstate commerce may be, the Hobbs Act forbids interference "in any way or degree."

For the reasons stated, it is

Ordered that the motion to dismiss the indictment be, and hereby is, denied.