924 F.2d 1053
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maurice Owen GIBSON, Defendant-Appellant.
 No. 90-5642.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 2, 1990.
Decided Feb. 4, 1991.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Elizabeth City. Terrence W. Boyle, District Judge. (CR-89-9)
 Jack Benjamin Crawley, Jr., Cheshire, Parker, Hughes & Manning, Raleigh, N.C., for appellant.
 Thomas M. Gannon, United States Department of Justice, Washington, D.C. (Argued), for appellee; Margaret Person Currin, United States Attorney, Richard Hancock Moore, Assistant United States Attorney, Raleigh, N.C., on brief.
 E.D.N.C.
 REVERSED.
 Before PHILLIPS and CHAPMAN, Circuit Judges, and C. WESTON HOUCK, United States District Judge for the District of South Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Maurice Owen Gibson (Gibson) appeals from his conviction for transportation of stolen securities and aiding and abetting in the transportation of stolen securities in violation of 18 U.S.C. Secs. 2314 and 2. Because we find that the trial court's jury instructions constructively amended the indictment, we reverse Gibson's conviction.
 
 
 2
 * Gibson operated Shattar Sales, a company that sold footlockers to prison systems. In 1979, he signed a contract with the Airmold Division of W.R. Grace and Company (Airmold) under which Airmold agreed to manufacture the footlockers. Gibson became friendly with co-defendant Lynne Bradley, Airmold's credit and data processing manager, in 1983.
 
 
 3
 Before Gibson's trial, his co-defendant Bradley pleaded guilty to "unlawfully transport[ing] in interstate commerce ... a security taken by fraud, to wit, a check ... payable to the John Fluke Company ...," and then testified against Gibson at trial. Bradley's testimony, in summary, was that he had told Gibson that the John Fluke Manufacturing Company, an Everett, Washington company, had left credits amounting to $27,000 on Airmold's books. Gibson asked Bradley for help in obtaining the necessary down payment for one of his footlocker contracts, and assured Bradley that he would replace the funds in Airmold's accounting system. Bradley testified that after Gibson repeated his request several times, Bradley arranged that a check payable to the John Fluke Company for $22,179.88 would be drawn on an Airmold account.
 
 
 4
 In July of 1985, Bradley flew to New York to deliver the check to Gibson. Gibson conceded that he had received the check from Bradley, but he claimed that he did not know that Bradley had unlawfully taken the check from Airmold. Gibson testified that he had planned to mortgage his house to raise money for the down payment, but Bradley had offered to help. Bradley told him that he managed three North Carolina companies, and that he could write Gibson a check from one of these companies, the John Fluke Company. Gibson stated that Bradley told him to open a bank account in the name of the John Fluke Company so that he could negotiate the check. According to Gibson, Bradley said he could not write a check directly to Shattar Sales because of objections from his associates, so he would fly to New York to bring Gibson a check payable to the Fluke Company. Gibson asserted that he deposited the check in good faith reliance on Bradley's statement that he was lending Gibson money from one of his companies.
 
 
 5
 The jury apparently discredited Gibson's testimony, and found him guilty. This appeal followed.
 
 II
 
 6
 Gibson argues that the trial court's jury instructions impermissibly amended his indictment.[1] The indictment charged that Gibson
 
 
 7
 did unlawfully transport and cause to be transported in interstate commerce ... a security taken by fraud: to wit, a check ... payable to the "John Fluke Co." ... knowing the same to have been taken by fraud, in violation of the provisions of Title 18, United States Code, Sections 2314 and 2 (aiding and abetting).
 
 
 8
 The statute itself prohibits transporting securities in interstate commerce "knowing the same to have been stolen, converted or taken by fraud." 18 U.S.C. Sec. 2314.
 
 
 9
 Both Gibson and the government submitted proposed jury instructions. Gibson's proposal, like the indictment, omitted the words "stolen" and "converted" and only included "taken by fraud." In contrast, the government's proposal followed the language of the statute, by including and defining "stolen" and "converted" as well as "taken by fraud." The government's proposal actually quotes 18 U.S.C. Sec. 2314, which provides in relevant part that it is a federal crime to
 
 
 10
 transport[ ] in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud.
 
 
 11
 (Emphasis added.)
 
 
 12
 At the charge conference, Gibson objected to the government's proposed instructions on the grounds that they amended the indictment. He argued that since the indictment used only the term "taken by fraud," the jury instructions must be limited to the same language. The government took the position that under Fed.R.Crim.P. 7(c)(1),[2] if the statute is mentioned in the indictment, the language of the statute controls--and therefore the defendant is on notice of all of the conduct that the statute proscribes. Although Gibson objected further that this was not a correct statement of the law, the district judge accepted the government's proposal to track the statutory language in the instructions.
 
 
 13
 The district judge instructed the jury that "the substantive crime charged in the indictment is a violation of Title 18, United States Code, Section 2314," and proceeded to quote the statute, including the phrase "knowing the same to have been stolen, converted or taken by fraud." Joint Appendix at 338. The judge then defined each of the three terms:
 
 
 14
 The word, stolen, includes all wrongful and dishonest taking of property with the intent to deprive the owner of the right and benefit of such ownership.
 
 
 15
 The phrase, converted, means to take goods, merchandise, security or money for one's own use by any dishonest or illegal means.
 
 
 16
 Now, the term, taken by fraud, refers to goods, ware, merchandise, securities or money taken from an owner through misrepresentation or deceit with the intent to deprive the owner of the use and benefit of ownership.
 
 
 17
 Joint Appendix at 339. These definitions show that if a jury finds that property is "taken by fraud," it must necessarily find that the property is also "stolen;" however, property that is "stolen" is not necessarily property "taken by fraud." Under the indictment, the jury could only convict Gibson if it found him guilty of transporting the check in interstate commerce, knowing that it had been "taken by fraud." The above instructions eliminate the requirement that the jury find that Gibson knew that Bradley had obtained the check "through misrepresentation or deceit"--it could have convicted Gibson simply for knowing that Bradley had taken the check unlawfully. The district judge's repeated use of the word "stolen" throughout the instructions without also including "taken by fraud" compounded this problem.[3]
 
 
 18
 We have held that " '[i]t is elementary that every ingredient of crime must be charged in the bill, a general reference to the provisions of the statute being insufficient.' " United States v. Hooker, 841 F.2d 1225, 1228 (4th Cir.1988) (en banc ) (quoting Hale v. United States, 89 F.2d 578, 579 (4th Cir.1937)). See also United States v. Pupo, 841 F.2d 1235, 1239 (4th Cir.1988) (en banc ). Although these cases deal with sufficiency of the indictment to support a conviction, they also stand for the proposition that "a mere citation to the applicable statute does not give the defendant notice of the nature of the offense.... [A] statutory citation does not ensure that the grand jury has considered and found all essential elements of the offense charged." Pupo, 841 F.2d at 1239.
 
 
 19
 Gibson claims that the jury instructions in this case constructively amended the indictment: "An indictment is constructively amended if the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment." United States v. Apodaca, 843 F.2d 421, 428 (10th Cir.1988), citing Stirone v. United States, 361 U.S. 212, 215-19 (1960). Gibson contends that the disjunctive phrasing of the government's proposed instructions could allow the jury to find him guilty of transporting a stolen or converted check, rather than a check "taken by fraud." As the Supreme Court has stated, "[e]ver since Ex parte Bain, 121 U.S. 1, was decided in 1887 it has been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." Stirone v. United States, 361 U.S. 212, 215-16 (1960).
 
 
 20
 The government asserts that given the facts of this case, the trial court's use of the words "stolen" and "converted" did not constructively amend the indictment. The government argues that the trial judge used the three terms almost interchangeably in the instructions. Since it was undisputed that Gibson's co-defendant Bradley had taken the check in question unlawfully, whatever word used to describe the unlawful taking was irrelevant to the issue in this case--whether Gibson knew that Bradley had unlawfully obtained the check.
 
 
 21
 We do not find this argument persuasive, however. The trial judge's definition of each of the three statutory terms--"stolen," "converted" and "taken by fraud"--made it evident to the jury that the terms are not interchangeable. In fact, to find that securities were "taken by fraud" necessitates a more specific finding than to find that securities were "stolen." The jury instructions also included numerous references to "stolen " property rather that property "taken by fraud." The repeated use of the word "stolen" in the instructions was improper given that Gibson was only indicted for transporting a check that he knew had been "taken by fraud." It is at least possible that the jury based its verdict on an instruction containing the word "stolen." Therefore, the district court's jury instructions did constructively amend Gibson's indictment.
 
 
 22
 The government contends in the alternative that even if the district court's instructions were erroneous as a matter of law, it was harmless error given the facts of Gibson's case. The government argues that the district court's error does not require a reversal of Gibson's conviction, because "[a]n erroneous instruction on an element of the offense can be harmless beyond a reasonable doubt, if, given the factual circumstances of the case, the jury could not have found the defendant guilty without making the proper factual finding as to that element." United States v. Doherty, 867 F.2d 47, 58 (1st Cir.1989).
 
 
 23
 In this case, the instructions were erroneous in regard to the manner in which the check was unlawfully taken. The government asserts that since the unlawful taking of the check was undisputed, the jury did not need to make a factual finding as to whether the check was stolen or converted or taken by fraud. Also, from the evidence, it was fairly clear that the check was "taken by fraud" since that is the charge to which Bradley pled guilty, and Gibson did not try to dispute it. Essentially, the jury only needed to decide the issue of whether Gibson knew that Bradley unlawfully obtained the check.
 
 
 24
 The problem with this argument is that the district court's instructions may have also affected the jury's determination of Gibson's knowledge. The use of the word "stolen" does make a difference because the court instructed the jury:
 
 
 25
 If you should find beyond a reasonable doubt from the evidence in the case that the check described in the indictment was stolen and was transported in interstate commerce as charged and that while recently stolen the property was in the possession of the accused in another state than that in which it was stolen, you may from those facts draw the inference that the check was transported or caused to be transported in interstate commerce by the accused with knowledge that it was stolen, unless possession of the recently stolen property by the accused in such other state is explained to the satisfaction of the jury by other facts and circumstances in evidence in the case.
 
 
 26
 Joint Appendix at 345 (emphasis added). Gibson claims that since he was not indicted for transporting a stolen check, it was unfair to give the jury a particularly damaging instruction about inferring "guilty knowledge" from possession of stolen property. We agree that the district court judge's use of the presumption of knowledge from possession of stolen goods, in combination with the repeated use of the word "stolen" throughout the instructions, constitutes reversible error. Since it is possible that the jury relied on these instructions without ever making the requisite specific finding that Gibson knew the check was "taken by fraud," the erroneous jury instructions were not harmless beyond a reasonable doubt.
 
 III
 
 27
 In sum, we find that the district court's jury instructions constructively amended Gibson's indictment. Because we find that this was not harmless error, we reverse Gibson's conviction.
 
 
 28
 REVERSED.
 
 
 
 [1]
 Gibson also objected to parts of the government's closing argument and to certain questions the government asked on cross-examination. Because we reverse Gibson's conviction on the jury instructions issue, we need not address these other claims
 
 
 [2]
 Federal Rule of Criminal Procedure 7(c)(1) provides that
 The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall be signed by the attorney for the government. It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated.
 
 
 [3]
 For example, the trial judge instructed the jury that
 [I]t is not necessary for the Government to prove to an absolute certainty that the defendant knew that the property was stolen.
 The defendant's knowledge may be established by proof that the defendant was aware of a high probability that the property was stolen unless, despite this high probability, the facts show the defendant actually believed that the property was not stolen.
 Joint Appendix at 341-42. There were also many other instances where the judge used the word "stolen" rather than "taken by fraud."