[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12054
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 11, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:08-cr-00263-RWS-GGB-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LAVELL BONE,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 11, 2011)

Before TJOFLAT, EDMONDSON and CARNES, Circuit Judges.

PER CURIAM:

Lavell Bone appeals his convictions and 461-month total sentence for (1)

bank robbery, 18 U.S.C. § 2113; (2) robbery interfering with commerce in

violation of the Hobbs Act, 18 U.S.C. § 1951; and (3) two counts of brandishing a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii).[1] No reversible error has been shown; we affirm.

Bone first challenges the district court's denial of his motion to suppress. In considering the district court's denial of a motion to suppress, we review fact determinations for clear error and the application of law to the facts de novo. United States v. Boyce, 351 F.3d 1102, 1105 (11th Cir. 2003). And we construe all facts in the light most favorable to the prevailing party. Id.

Bone's aunt (Tamatha), allowed law enforcement officers to search the spare bedroom that Bone sometimes used in her apartment. In this room, officers discovered, among other things, the keys belonging to the bank that had been robbed. Bone contends that he was entitled to some expectation of privacy in the room he used at his aunt's apartment and, thus, the officers needed his consent to search the room. Bone bears the burden of demonstrating a legitimate expectation of privacy in the room. United States v. Harris, 526 F.3d 1334, 1338 (11th Cir. 2008).

A search is permissible if an officer obtains the voluntary consent of either

---

[1]Bone robbed a Suntrust Bank and, two weeks later, robbed a Mrs. Winner's restaurant. He received 77-month concurrent sentences on the robbery counts and 84-month and 300-month mandatory consecutive sentences on the firearms counts. See 18 U.S.C. § 924(c)(1)(A), (C).

the person whose property is searched or of a third party who possesses common authority over the premises.  Illinois v. Rodriguez, 110 S.Ct. 2793, 2797 (1990). A person assumes the risk that a co-habitant might permit a common area to be searched.  United States v. Matlock, 94 S.Ct. 988, 993 n.7 (1974).

Here, Bone produced no evidence that he enjoyed the authority to exclude Tamatha from entering the spare bedroom.  Instead, the evidence showed that (1) only Tamatha's name was on the lease; (2) only Tamatha paid rent; (3) Bone stayed at the apartment sporadically; and (4) Tamatha and Bone both stored items in the spare bedroom where Bone sometimes stayed.  On these facts, we conclude that Tamatha enjoyed common authority over the bedroom and had authority to give consent to the officers to search the bedroom.  The district court committed no error in denying the motion to suppress.

Next, Bone argues that the district court abused its discretion by denying his motion to sever the trial of the bank robbery from the Hobbs Act robbery.  He contends that the failure to sever prejudiced him because the jury likely had difficulty separating the evidence about the two distinct robberies.

Rule 14 of the Federal Rules of Criminal Procedure permits appropriate relief from joinder "[i]f the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant."  But we "will not reverse the denial of a severance motion

3

absent a clear abuse of discretion resulting in compelling prejudice against which the district court could offer no protection." United States v. Walser, 3 F.3d 380, 385 (11th Cir. 1993). To assess compelling prejudice, we look at whether, under the circumstances of a particular case, "it is within the capacity of jurors to follow a court's limiting instructions and appraise the independent evidence against a defendant solely on that defendant's own acts, statements, and conduct in relation to the allegations contained in the indictment and render a fair and impartial verdict." Id. at 386-87.

Bone fails to carry his burden to show that severance was proper. The government presented the evidence of each robbery in an organized and sequential manner, which minimized the opportunity for juror confusion over which evidence applied to which robbery. The district court expressly instructed the jury to consider the evidence for each count separately; and Bone provides no evidence to rebut the general presumption that the jury was capable of following the court's instructions. Id. at 387. Bone presents only conclusory allegations of prejudice, which do not meet Bone's "heavy burden." Id. at 386.

Bone argues that the district court erred in denying his motion for judgment of acquittal on the Hobbs Act robbery because the government failed to prove an effect on interstate commerce. We review de novo the sufficiency of the evidence,

4

viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict. United States v. Rodriguez, 218 F.3d 1243, 1244 (11th Cir. 2000).

The Hobbs Act criminalizes obstructing, delaying, or affecting "commerce or the movement of any article or commodity in commerce, by," among other things, robbery. 18 U.S.C. § 1951(a). The Hobbs Act's jurisdictional language manifests "a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence." Stirone v. United States, 80 S.Ct. 270, 272 (1960). So, the government need only establish a minimal effect on interstate commerce to support a violation of the Hobbs Act; and a "mere 'depletion of assets' of a business engaged in interstate commerce" meets the jurisdictional requirement. Rodriguez, 218 F.3d at 1244.

Here, the government showed that the Mrs. Winner's store that Bone robbed was a corporate store with corporate headquarters located in Florida. The store purchased restaurant items from vendors in many different states. Bone escaped with $524.46 from the robbery and the store had to close for two hours, resulting in an additional loss of $180. The total loss represented 0.18 percent of the daily gross receipts from all Mrs. Winner's stores. From these facts, a jury could reasonably find that Bone's robbery obstructed, delayed, or affected interstate

5

commerce.  See United States v. Gray, 260 F.3d 1267, 1270 (11th Cir. 2001) (concluding that, where a defendant escaped with cash and the money drawer from a fast food restaurant and disrupted the restaurant's normal operations during a busy period of the day, a reasonable jury could conclude that the robbery affected interstate commerce).

We now turn to Bone's sentencing arguments.  He challenges the imposition of the 84-month consecutive sentence for the first firearm offense followed by the 300-month consecutive sentence for the second firearm offense, arguing that the "except" clause of section 924(c) precludes the imposition of two consecutive sentences for different firearms offenses.

Bone's argument is foreclosed by our precedent, which mandates multiple consecutive sentences for multiple section 924(c) violations.  See United States v. Tate, 586 F.3d 936, 946-47 (11th Cir. 2009), cert. denied, 131 S.Ct. 634 (2010) (rejecting defendant's argument that multiple violations of section 924(c) required a single 300-month sentence and affirmed the imposition of an 84-month and two 300-month consecutive sentences for three separate violations of section 924(c) based on the plain language of the statute).  We have explained that "[m]ultiple offenses under section 924(c) will result in multiple sentences, that is, multiple terms: one term for each offense." See United States v. Wright, 33F.3d 1349, 1350

(11th Cir. 1994). And, under section 924(c)(1)(D)(ii), "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person."

In his allocution at sentencing, Bone asked the court to release him immediately; and he filed with the court a "notice and declaration of certificate of sovereign status." Bone contends that the district court improperly considered his declaration of sovereignty in denying Bone a downward variance from the advisory guidelines range, in violation of his First Amendment rights.[2]

The "Constitution does not erect a per se barrier to the admission of evidence [about a person's] beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." Dawson v. Delaware, 112 S.Ct. 1093, 1097 (1992). "[A]ssociational evidence might serve a legitimate purpose in showing that a defendant represents a future danger to society." Id. at 1098.

The district court committed no plain error by considering Bone's declaration of sovereignty. The court reasoned that the statements were evidence of Bone's refusal to accept responsibility for his acts, his unpreparedness to return

---

[2]Because Bone did not object to his sentence on this constitutional ground at sentencing, we review the present claim only for plain error. See United States v. Martinez, 434 F.3d 1318, 1323 (11th Cir. 2006).

to society, the danger to himself and to others of returning him to society, and his lack of respect for the law. These points are proper sentencing considerations under 18 U.S.C. § 3553(a). The district court did not consider Bone's speech for the irrelevant and impermissible purpose of demonstrating his general moral reprehensibility. See Dawson, 112 S.Ct. at 1097-98.

AFFIRMED.