**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50347 |
| Plaintiff-Appellee, | D.C. No. 2:12-cr-00415-CAS-2 |
| v. | |
| AUGUSTUS OHEMENG, M.D., | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted May 5, 2015
Pasadena, California

Before: LIPEZ,[**] WARDLAW, and MURGUIA, Circuit Judges.

Augustus Ohemeng, the medical director of the Pacific Clinic in Long Beach,

California, appeals his jury conviction for six counts of health care fraud in violation

of 18 U.S.C. § 1347. Ohemeng claims that the government's introduction at trial of

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]      The Honorable Kermit V. Lipez of the United States Court of Appeals
for the First Circuit, sitting by designation.

evidence that he conducted unnecessary medical tests constituted a constructive amendment, or, in the alternative, a prejudicial variance of the indictment. He further contends that the district court abused its discretion under U.S.S.G. § 1B1.3 when it calculated the loss amount to include the acts of appellant's co-schemers. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and we affirm.

1. The admission of evidence showing Ohemeng billed Medicare for medically unnecessary tests and prescribed some recruited patients medically unnecessary power wheelchairs did not constructively amend the indictment because the crime charged in the indictment was not "substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved." *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984). The government provided ample evidence to establish the allegation in the indictment that Ohemeng participated in a scheme to defraud Medicare by writing fraudulent prescriptions for enteral nutrition and feeding syringes. Specifically, there was evidence that the Pacific Clinic used paid recruiters to recruit Medicare beneficiaries, that Ohemeng and his co-schemer George Tarryk prescribed enteral nutrition and feeding syringes to those patients, and that none of these patients had a feeding tube or used a syringe to drink the enteral nutrition, and none requested syringes from the clinic. Because the government proved the scheme charged, there was no infringement on Ohemeng's

2

"right to have the grand jury make the charge on its own judgment," *Stirone v. United States*, 361 U.S. 212, 218-19 (1960), and accordingly, no amendment of the indictment.

Furthermore, the challenged evidence was used to demonstrate Ohemeng's knowledge of the fraudulent scheme charged in the indictment and therefore was admitted for a "legitimate" purpose. *United States v. Bhagat*, 436 F.3d 1140, 1146 (9th Cir. 2006); Fed. R. Evid. 404(b) (stating that "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). Moreover, the district court's limiting instruction[1] made explicit the limited application of the evidence of unnecessary medical tests.

---

[1] The parties agreed to the following limiting instruction, a version of which was given three times during the course of the trial, and again at the close of evidence:

> The government has introduced evidence that defendant ordered or approved unnecessary medical tests for patients that also received a prescription for Enteral Nutrition and syringes, that these tests were billed to Medicare, and that Medicare paid the defendant. You may consider this evidence to determine if defendant knowingly and willfully participated in the conduct charged in the indictment. You may also consider this evidence for its bearing, if any, on the question of defendant's knowledge, intent, motive, or absence of mistake. Defendant is charged with six counts, each of which represents a separate execution of the alleged scheme to defraud Medicare. Those executions are claims to Medicare for Enteral Nutrition and syringes, and not medical tests ordered or approved by defendant.

Finally, because the government did not present "a materially different set of facts from those alleged in the indictment" during trial, there was no material variance. *See Bhagat*, 436 F.3d at 1146. As alleged in the indictment, the government proved that Ohemeng signed erroneous prescriptions and Certificates of Medical Necessity for patients who were not tube-fed. The government introduced the evidence of unnecessary medical testing to establish Ohemeng's knowing participation in the scheme. Its introduction did not materially alter the facts as alleged in the indictment, or "steer[] [the jury] toward a finding at variance with the indictment," *id.* at 1147, but rather supplemented those facts by establishing Ohemeng's knowledge of the fraud perpetrated at the Pacific Clinic.

2.  The district court properly calculated the loss amount at sentencing. Ohemeng was convicted for his participation in a scheme that resulted in $5,664,204 in fraudulent Medicare claims for enteral nutrition and feeding syringes for patients who could eat and drink normally, of which Medicare paid $2,964,934. Both the billed amount and the paid amount exceeded $2,500,000, which resulted in an 18-level upward adjustment. Under the Guidelines, Ohemeng is responsible for foreseeable losses caused by his own prescriptions and prescriptions written by his co-schemers. *See* U.S.S.G. § 1B1.3(a)(1)(B) (stating that "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or

4

enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)," the offense level includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity"); U.S.S.G. § 2B1.1, comment (n.3(A)(iv)) (defining "reasonable foreseeable pecuniary harm" as "pecuniary harm that defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense").

**AFFIRMED.**