**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3993
_____

UNITED STATES OF AMERICA

v.

SHERRYMAE MORALES,

Appellant

_____

On Appeal from the District
Court of the Virgin Islands
(D.C. Criminal No. 3-14-cr-00054-001)

District Judge: Honorable Curtis V. Gómez

Argued on May 16, 2016

Before: FUENTES,[*] VANASKIE, and RESTREPO, *Circuit Judges*

(Opinion Filed: October 25, 2016)

Elizabeth A. DeLosa, Esq. **[Argued]**
Office of the Federal Public Defender
1803 Kongens Gade
St. Thomas, VI 00802

Omodare B. Jupiter, Esq.
Office of the Federal Public Defender
1115 Strand Street

---

[*] Honorable Julio M. Fuentes assumed senior status on July 18, 2016.

Suite 201
Christiansted, VI 00820

*Counsel for the Appellant*

Everard E. Potter, I, Esq. **[Argued]**
Ronald Sharpe, Esq.
Office of United States Attorney
5500 Veterans Building, Suite 260
United States Courthouse
St. Thomas, VI 00802

*Counsel for the Appellee*

_____

OPINION[**]

_____

FUENTES, *Circuit Judge*.

A jury convicted Sherrymae Morales of twenty-one counts of wire fraud (18 U.S.C. § 1343) for holding two full-time positions and getting paid twice for the same 40-hour work week. Following the jury verdict, she was sentenced to 12 months and one day in prison and ordered to pay approximately $45,000 in restitution.

On appeal, Morales argues that the government and the District Court impermissibly broadened the bases for her conviction by allowing the jury to convict on a theory of material omission. She also contends that the jury was not properly instructed on the unanimity requirement for deciding the form of her "scheme to defraud." Lastly, she argues that the District Court erred in calculating her sentence and restitution, charging that the government failed to meet its burden to show any actual or intended

_____

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

loss to the victim.  We have thoroughly reviewed the arguments on appeal and find that, with the exception of the challenge to her sentence, they are without merit.  Accordingly, we will affirm the conviction, vacate the judgment of sentence, and remand for further proceedings.

I.[1]

At trial, the government presented a case that Morales defrauded her employer, the Virgin Islands National Guard (the "Guard"), by representing that she was working full-time for the Guard when, contrary to its policies and instructions, she was also employed full-time with a private contracting firm, Military Personnel Services Corporation ("Military Services").  A former employee of the Guard, Morales had joined Military Services in 2007, working closely with the Guard in a contract position.  The first segment of her alleged scheme ran from March 2010 through June 2010, when she returned to work for the Guard but did not immediately quit her contract position, in effect drawing two full-time salaries for those three months.  The second segment began when she picked the contract position back up in September 2010, drawing two salaries again until she finally resigned the contract for good in July 2011.  When Guard employees observed Morales performing duties associated with the contract position while employed by the Guard, they assumed she was volunteering—a misimpression she sometimes confirmed and sometimes simply declined to correct.  Timesheets, meanwhile, showed her working for both employers during the same hours of the day.

---

[1] The District Court of the Virgin Islands exercised jurisdiction under 18 U.S.C. § 3241. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

3

Yet as the government admitted in its opening statement, "by all accounts she was a good employee."[2]  Witnesses, including those for the government, praised Morales as a competent, conscientious, and hardworking employee, who often pulled long hours on evenings and weekends.  And Morales, who testified in her own defense, explained that she continued to work for Military Services on a supervisor's request during the search for a qualified replacement in the contract position.

The jury ultimately convicted on wire-fraud counts covering roughly the second part of the dual-employment scheme.  Each "count" corresponded to a separate direct deposit of Morales's Guard paycheck.[3]

## II.

Morales challenges her conviction on the basis that the presentation at trial, including the jury instructions, amounted to a constructive amendment of the indictment, or alternatively an impermissible variance from the conduct alleged in the indictment.  In a related claim, she argues that the District Court should have issued an augmented unanimity instruction to the jury.  As discussed below the margin, we have reviewed these arguments and find them to be without merit.[4]

---

[2] J.A. 68.

[3] The District Court had entered partial judgment of acquittal under Fed. R. Crim. P. 29 prior to charging the jury, which otherwise acquitted Morales of the balance of the surviving counts in the indictment.

[4] The indictment was not constructively amended.  It tracked the language of the statute, and both we and other courts have held that a "scheme to defraud" reaches both misrepresentation and omission.  *See Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004); *United States v. Morris*, 80 F.3d 1151, 1161 (7th Cir. 1996) ("[T]he [mail and wire fraud] statutes apply not only to false or fraudulent representations, but also to the

III.

Morales also argues that the District Court erred in calculating loss under U.S.S.G. § 2B1.1. The loss calculation, in turn, had the effect of enhancing her sentence and setting the restitution she owed to the Guard.[5] Her arguments here have purchase.

By way of background: at sentencing, the District Court identified this Court's decision in *United States v. Nagle*[6] as guiding its application of § 2B1.1. The District Court heard argument on the definition of "credits against loss" contained in § 2B1.1 comment 3(E)—which, among other things, requires that the loss calculation include an offset to account for "the fair market value of the property returned and the services rendered"—with the government conceding that it was "difficult to calculate how that loss is attributed."[7] Agreeing that Morales was entitled to a credit against the loss, despite the government's position to the contrary, the Court calculated a "reasonable

omission or concealment of material information, even where no statute or regulation imposes a duty of disclosure."). The cases upon which she relies involved indictments that were more specific, and thus more restrictive, than the one at issue here. *See, e.g.*, *Stirone v. United States*, 361 U.S. 212, 218 (1960); *United States v. Wozniak*, 126 F.3d 105, 109–10 (2d Cir. 1997) ("[T]he indictment could have charged Wozniak generally with offenses involving controlled substances . . . without mention of any specific drug."). For substantially the same reasons, we discern no improper variance and find that an augmented unanimity instruction was not warranted. *See United States v. Ryan*, 828 F.2d 1010, 1020 (3d Cir. 1987) (articulating limited instances where an augmented instruction might be necessary); *see also United States v. Daniel*, 749 F.3d 608, 613–14 (7th Cir. 2014) (noting that facts constituting a scheme to defraud are not elements requiring unanimity).

[5] We exercise plenary review of the District Court's interpretation of the Guidelines and clear-error review over any findings of fact. *United States v. Napier*, 273 F.3d 276, 278 (3d Cir. 2001).

[6] 803 F.3d 167 (3d Cir. 2015), *cert. denied*, 136 S. Ct. 1238 (2016).

[7] J.A. 597.

estimate of the loss" that did not require "mathematical precision,"[8] as it was authorized to do under comment 3(C). The presentence report ("PSR") reported the loss to the Guard as $90,852; Morales had objected to this figure as unsupported, and the government had described it as deriving from trial exhibits reflecting "the actual gross pay defendant received" from the Guard."[9] The District Court cut the PSR figure in half, coming up with a total loss of $45,426—a six-level enhancement under § 2B1.1(b)(1)(D). On a Guidelines range of 12–18 months, the District Court sentenced Morales to one year and a day in prison followed by three years of supervised release, and imposed restitution in an amount equal to the estimated loss.

While the District Court is entitled to estimate a reasonable loss figure, we disagree with its estimate on this particular record in the absence of additional findings of fact. Keeping in mind that the government bears the burden of "prov[ing] by a preponderance of the evidence the facts in support of a sentence enhancement,"[10] we find that the estimate failed to do what it appeared to be trying to do: credit Morales with the value of services that she actually provided to the Guard.[11]

There are two primary problems with the loss calculation. The first, arguably more minor, is the $90,852 figure itself. Although the District Court accepted it over Morales's objection, we are unable to meaningfully ensure that it is what the government

---

[8] J.A. 603.

[9] Gov't Sentencing Mem. 5, ECF No. 108.

[10] *United States v. Evans*, 155 F.3d 245, 253 (3d Cir. 1998).

[11] *Cf. Nagle*, 803 F.3d at 180–81 (discussing loss calculation in a "normal fraud case").

says it is (*gross* salary as opposed to after-tax salary on the counts of conviction), as the relevant trial exhibits do not appear to have been provided to us.

The second problem inheres in the unique record before the District Court. The District Court found that Morales did not actually work 80 hours per week between the Guard and Military Services, a sensible finding to which we defer. But that is not the same as finding that Morales worked only 50% of the time for the Guard. If loss is to be measured from the perspective of the money paid by the Guard over the counts of conviction, the present record, in the absence of findings to the contrary, does not show by a preponderance that the Guard received only half of the services for which it paid, or that Morales did not fulfill her obligation to the Guard as its employee.

Significantly, the government did not put on witnesses who testified to Morales's absenteeism or poor performance at the Guard, or to the declining quality of her work product. Instead, she received almost universal praise. This is also not a case where a defendant performed a job that she was unqualified to hold, having falsified or misrepresented her qualifications in order to obtain it.[12] And that she dedicated some hours in the day to Military Services is not dispositive, as it was apparently permissible to *volunteer* for the contractor while also maintaining Guard employment; the problem was the paycheck, not the work itself.

---

[12] *Cf. Evans*, 155 F.3d at 253 ("[T]he degree of harm . . . depends on the quality of services rendered."). This case also differs from *United States v. Burns*, 104 F.3d 529 (2d Cir. 1997), where the record was sufficient—via evidence of the hours devoted to another "job"—to allow the sentencing court to determine that the defendant did not actually meet his work obligations to his employer and thus caused a salary-based loss. *See id.* at 536. The record here is far more ambiguous and the estimate more sweeping.

At oral argument before this Court, the government conceded that nothing in the record specifically showed that Morales failed to perform services for the Guard. Further, the government characterized as "impossible" the task of determining precisely how Morales's scheme caused a loss to the Guard. Yet even when showing an exact amount proves elusive, it remains within the government's power to present evidence that would aid in forming a well-grounded estimate.

In sum, while the District Court's approach to estimation was reasonable—focusing on the losses suffered by the named victim, and attempting to determine, based on Morales's salary, the equivalent loss to such victim—the record does not support the broad result of its estimate. On remand, the District Court should make specific factual findings to determine whether the government has identified cogent evidence from the record showing that Morales caused a loss to the Guard. If the government has done so, the District Court should estimate a reasonable loss amount based on its magnitude—confirming the origin of the $90,852 figure, if necessary—and should then impose sentence and restitution reflecting the new loss amount.[13]

## IV.

For the foregoing reasons, we will affirm the District Court's judgment of conviction, vacate its judgment of sentence, and remand for resentencing.

---

[13] We do not forestall the possibility that the District Court may, on remand, determine that its original 50% loss amount is in fact supported by the record, or that portions of its judgment of sentence might remain the same even if a revised loss calculation alters Morales's Guidelines range. Nevertheless, we reemphasize that the government is not entitled to the sentencing enhancement simply because it prevailed in part at trial. It must be held to its burden of proof.

8